[Cite as *Federle v. Federle*, 2019-Ohio-2565.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| AMY FEDERLE, | : | APPEAL NO. C-180171 |
| | | TRIAL NO. DR1600420 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| TODD FEDERLE, | : | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relation
Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 28, 2019

*Brinkman & Associates* and *Karen R. Brinkman*, for Plaintiff-Appellant,

*George & Underwood LLC* and *Krystina S. Underwood,* for Defendant-Appellee.

**MOCK, Presiding Judge.**

{¶1} Plaintiff-appellant Amy Federle ("Amy") appeals from the domestic relations court's February 26, 2018 decree of divorce which adopted an oral in-court settlement agreement entered into by the parties in open court before the magistrate on December 5, 2017.

{¶2} Amy and defendant-appellee Todd Federle ("Todd") were married in 2005. They have three children. In March 2016, Amy filed a complaint for divorce. On December 5, 2017, after a 19-month period of discovery, predecree motions, substitution of counsel, and negotiations, the parties appeared, with their trial counsel, before the magistrate and indicated that they had reached an agreement to end the litigation.

{¶3} At the hearing, Todd's trial counsel read the terms of the settlement agreement between the parties into the record. The magistrate then asked each party whether he or she was voluntarily agreeing to those terms and both answered in the affirmative. On February 26, 2018, the domestic relations court journalized a divorce decree. Neither Amy nor her trial counsel signed the decree. Amy appealed.[1]

{¶4} In two interrelated assignments of error, Amy asserts that the trial court erred in adopting the divorce decree. While she admits that she acknowledged the terms of the agreement, which had been read into the record before the magistrate, she now asserts that the decree ultimately adopted by the domestic relations court omitted terms of the parties' agreement and included different and additional terms. She maintains that the parties continued to dispute and negotiate over terms of the settlement agreement after the December hearing, and that the

---

[1] Amy also filed timely a motion seeking both a new trial and relief from judgment in the trial court on the same day that she filed her notice of appeal. Our record does not reflect that the domestic relations court has ruled on the motion. Neither party has sought a remand from this court to resolve the new-trial motion before appeal under App.R. 4(B)(2)(b).

domestic relations court failed to hold a hearing on these matters before entering the decree of divorce thus denying her an opportunity to be heard on the disputed terms. She also argues that the magistrate's failure to issue a decision under Civ.R. 53 denied her the opportunity to raise objections in the domestic relations court. Finally, she maintains that because she failed to sign the decree, it is not an enforceable decree. We disagree.

{¶5} The law highly favors settlement agreements as an efficient means to prevent or to end litigation. *See Infinite Sec. Solutions, L.L.C. v. Karam Properties, II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16. And courts have ratified the use of settlement agreements to end divorce proceedings. *See Walther v. Walther*, 102 Ohio App.3d 378, 383, 657 N.E.2d 332 (1st Dist.1995); *see also Holland v. Holland*, 25 Ohio App.2d 98, 101, 266 N.E.2d 580 (10th Dist.1970); *Ferreri v. Ferreri*, 11th Dist. Trumbull No. 2017-T-0055, 2018-Ohio-699, ¶ 28; *Eckstein v. Eckstein*, 12th Dist. Warren No. CA2010-10-097, 2011-Ohio-1724, ¶ 13.

{¶6} Where a settlement agreement is arrived at by the parties in open court and preserved by being read into the record, the domestic relations court may enter a judgment which accurately reflects the terms of the agreement, adopting the agreement as its judgment. *See Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972), paragraph one of the syllabus; *see also Walther* at 383; *Benz v. Benz*, 11th Dist. Geauga No. 2004-G-2589, 2005-Ohio-5870, ¶ 14. This rule also obtains when the agreement was entered into before a magistrate. *See Benz* at ¶ 14. The in-court agreement may be incorporated into the court's final judgment, in the absence of an agreement in writing or approval and signature of a party or her attorney. *See Holland* at 101; *Eckstein* at ¶ 13.

{¶7} The domestic relations court's authority to enforce in-court settlement agreements is discretionary. *See Walther* at 383; *see also Ferreri* at ¶ 25. So long as the court is satisfied that the settlement agreement reached by the parties was not

procured by fraud, duress, overreaching, or undue influence, the court may adopt the settlement agreement as its judgment. *Walther* at 383.

{¶8}    Therefore, we review the domestic relations court's decision adopting the in-court settlement only for an abuse of that discretion. An abuse of discretion is shown when a decision is unreasonable, arbitrary, or unconscionable; that is, when the trial court issues a ruling that is not supported by a "sound reasoning process." *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990); *see also Parker v. Parker*, 1st Dist. Hamilton No. C-130658, 2014-Ohio-5516, ¶ 7.

{¶9}    Here, the record certified for our review contains a transcript of the December 5, 2017 hearing held before the magistrate. Both parties were present with their trial counsel. Our review of that transcript shows that the terms of the settlement agreement between the parties was read into the record by Todd's counsel. The recitation of the terms filled seven pages of transcript. The agreement resolved issues including custody over the parties' minor children, parenting time including holidays and summer vacation time, responsibility for healthcare for the children, child support and property equalization, and the disposal of property.

{¶10}   When Todd's counsel finished the recitation, the magistrate inquired of both parties, then under oath, whether they were voluntarily agreeing to the stated terms.

> THE MAGISTRATE:  Ms. Federle, you've heard what has been read
> into the record.  You have negotiated quite a bit with your counsel and
> with the other side to effectuate this settlement.  Is everything that has
> been read in what you have agreed to today?
>
> AMY:  Correct.

4

{¶11} Amy testified briefly and was then asked by Todd's trial counsel, "You have listened to what was read into the record, and you have said that is your agreement?" She again replied, "Yes."

{¶12} Finally, the magistrate asked Amy:

Okay. Obviously, you have had a chance to review this, and you disclosed all your assets and debts when you prepared this, and the other side has disclosed all theirs and everyone is in agreement?

{¶13} Again, Amy replied, "Yes."

{¶14} Each of the parties voluntarily agreed to the terms read into the record in open court. Amy's refusal to sign the decree or to permit her counsel to sign did not affect the enforceability of the decree. *See Holland*, 25 Ohio App.2d at 101, 266 N.E.2d 580. Thus the domestic relations court had the discretion to adopt the settlement agreement as its judgment and decree of divorce as long as the decree "accurately delineate[d] those terms." *See Benz*, 11th Dist. Geauga No. 2004-G-2589, 2005-Ohio-5870, at ¶ 14; *see also Walther*, 102 Ohio App.3d at 383, 657 N.E.2d 332 ("In the absence of fraud, duress, overreaching or undue influence, or of a factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment.").

{¶15} Amy asserts that some of the provisions in the divorce decree are inconsistent with the terms that were read into the record during the hearing before the magistrate. However, in making this assertion, she has not identified any substantial conflicts between the terms of the in-court agreement and the provisions of the final divorce decree. Rather, she has advanced a number of hypothetical situations where the terms of the decree, rather than diverging from the in-court agreement, might not be definite enough, particularly with regard to summer parenting time and child support and property equalization.

{¶16} We have compared the provisions of the final divorce decree with the terms that were read into the record during the hearing and have found no substantial differences between the two. For example, the in-court settlement, agreed to before the magistrate, provides that Amy "shall be residential parent and legal custodian of the two daughters. [Todd] shall be residential parent and legal custodian of their son." The divorce decree includes the identical provision. With regards to Todd's parenting time, the in-court agreement provides that his "parenting time with his daughters is going to be 5:30 to 8:30 every Tuesday and every other weekend from Friday at 6:00 to Sunday at 6:00 unless the parties agree otherwise." The decree contains the same provision but adds that Todd shall transport the children to and from Amy's house.

{¶17} The children's summer vacations were allocated as follows in the in-court agreement

> The extended summer visitation is going to deviate from the standard order in that Mother is going to have six weeks with the daughters in Texas. It's going to be allocated as follows: The week immediately preceding Mother's first three-week block of time in Texas is going to be with Father. Father is going to have one week, Mother will then have three weeks, Father will have a week in between the next three-week block for Mother. So, it's going to be one week Father, three weeks Mother in Texas or Florida or wherever she goes, one week Father and then three weeks Mother and then back to one week Father. Father will end up with three weeks out of that summer.
>
> They are either going to meet in the middle, or they are going to agree to do otherwise, however they feel about exchanging the children during the summer.

{¶18} The summer-visitation text of the divorce decree was almost identical, providing that:

> Extended time in the summer shall be as follows: Father shall have the first full week after school ends, Mother will have the children the next three consecutive weeks; Father will then have the next week and Mother will have the next three consecutive weeks. Father will have the following week. Each parent will be responsible for any daycare expenses when they have the children during the summer. Additional parenting time may occur as the parties agree. The parties agree if pickup out of state is required, they will met at a midpoint to do the transfer or as parties may agree otherwise share the cost of any expenses incurred as parties may agree regarding such transfer. Both parties agree to reasonable telephone contact, facetime or skype while the children are with the other parent so as to maintain contact with the minor children.

{¶19} The in-court agreement provided that child support would be "calculated initially on a split parental rights worksheet. [But] whatever that number is, Father is going to pay directly to Mother on top of that initial number to make up to $1,700 a month capped. So if child support ends up being $1,000, he is going to pay an additional $700." On this equalization term, the decree provides that

> [a]s a result of the above distributions and divisions of assets and debts, [Todd] shall pay directly to [Amy] the sum of $1,700 [per month.] This amount will be reduced by whatever [Todd] pays in calculated child support, minus 2% processing fee. * * * If [Todd] is paying $1,000 per month in child support, his property equalization [will be] $700. * * * The parties acknowledge that this is for domestic

support and the parties specifically acknowledge this is not dischargeable in bankruptcy.

{¶20} These comparisons are typical and demonstrate that each of the essential terms of the in-court agreement was substantially included in the written divorce decree. The only provision contained in the decree but not covered in the in-court agreement was that the costs of the litigation were to be born equally, and that each party should pay his or her own legal fees. The in-court agreement made no provision for costs or fees.

{¶21} The hypothetical problems envisioned by Amy regarding summer visitation and other matters are resolvable under the express authority granted the parties to "agree to do otherwise," or by judicial resolution, as under any divorce decree. *See Schrock v. Schrock*, 12th Dist. Madison No. CA2005-04-015, 2006-Ohio-748, ¶ 14; *see also Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist.1983).

{¶22} When considered as a whole, the record before us simply does not support Amy's contention that the provisions of the divorce decree conflicted with the terms of the parties' in-court agreement. Thus the domestic relations court's decision to adopt the in-court settlement agreement as its judgment and decree of divorce was supported by a sound reasoning process, and did not constitute an abuse of discretion. *See AAAA Ents.*, 50 Ohio St.3d at 161, 553 N.E.2d 597; *see also Walther*, 102 Ohio App.3d at 383, 657 N.E.2d 332.

{¶23} Amy next argues that even after the December 5, 2017 hearing the terms of the proposed agreement were disputed, and negotiations between the parties continued as late as February 7, 2018, less than three weeks before the decree of divorce. The only support for her contention is contained in photocopies of emails between the parties attached to her appellate brief. But they are not part of the record on appeal. *See* App.R. 9(A); *see also State v. Tekulve*, 188 Ohio App.3d 792,

2010-Ohio-3604, 936 N.E.2d 1030 (1st Dist.). A reviewing court cannot add matter to the record before it and then decide the appeal on that basis. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), syllabus; *see also Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 52. Therefore, we do not consider these documents in resolving this portion of her argument.

{¶24} Moreover, Amy has forfeited any challenge to the magistrate's or the court's failure to issue a decision or separate findings of fact and conclusions of law. On the day after the settlement hearing, both parties and their trial counsels signed an entry, journalized by the magistrate, entitled "Waiver and Consent For Merits Hearing (Divorce)." The parties "request[ed] the Court to grant their divorce and * * * accept and to adopt their respective agreements filed with this Court on all matters of parenting, support, property and debts." The parties also expressly waived their rights to separate findings of fact and conclusions of law and to an objection period.

{¶25} The first and second assignments of error are overruled.

{¶26} Therefore, we affirm the domestic relations court's decree of divorce.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.