[Cite as *Sharif v. Sharif*, 2022-Ohio-2856.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BRIDGETTE C. SHARIF, | : | APPEAL NO. C-210472 |
| | | TRIAL NO. DR-1300044 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| ZULFIKAR A. SHARIF, | : | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 17, 2022

*Taft, Stettinius & Hollister* and *Aimee L. Keller*, for Plaintiff-Appellee,

*Barbara J. Howard Co., LPA,* and *Barbara Howard*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Zulfikar A. Sharif ("father") appeals the judgment of the Hamilton County Court of Common Pleas, Domestic Relations Division, raising three assignments of error for the court's review. For the reasons that follow, we affirm the judgment of the domestic relations court in part, reverse it in part, and remand the matter for further proceedings consistent with the law and this opinion.

### Factual and Procedural Background

{¶2} Plaintiff-appellee Bridgette C. Sharif ("mother") filed a complaint for divorce from father in 2013. In 2014, the court journalized a decree of divorce and a decree of shared parenting, which named both parents as residential parent and legal custodian of their two children.

{¶3} Parenting time and child support were established through a joint plan for shared parenting, though both have been modified several times since. Per a 2015 agreed entry, father's child support was set at $4,845 per month payable to mother. Before this litigation, father had alternating weekends with the children, and Monday evenings until Wednesday morning each week.

{¶4} On November 20, 2020, father filed a "motion to modify child support and to terminate reimbursement for childcare expenses." On April 2, 2021, father filed a motion to modify parenting time. Essentially, he sought to add additional parenting time on Mondays in the summer after his weekend parenting time.[1]

{¶5} On April 9, 2021, mother filed a motion to modify parenting time. Mother moved the court to "order that the children remain with Mother Monday

---

[1]Father's motion also asked for modifications to the holiday-time arrangement, though father only appeals the denial of his motion to modify "the routine parenting time schedule."

2

overnights during the summer and on school holidays."[2]   Mother also requested attorney fees.

{¶6}    On May 25, 2021, a hearing was held before a magistrate.  On July 2, 2021, the magistrate entered a decision on all the pending motions.  The magistrate recommended denying mother's motion to modify parenting time; granting father's motion to modify parenting time in part such that the children would stay with father all day on Mondays in the summer; denying father's motion to terminate reimbursement for childcare expenses; and granting father's motion to modify child support.  The magistrate did not award attorney fees.

{¶7}    Mother timely objected to the magistrate's decision, raising five objections.  First, mother argued that it was error for the magistrate to grant the motion to modify child support because the parties had already come to an agreement on that issue and had informed the magistrate of their agreement at the hearing. Mother attached two unsigned agreed entries to her objections, along with emails regarding the agreement that had been exchanged by the parties' attorneys.  Mother further argued that her motion to modify parenting time should have been granted; father's motion should have been denied; the holiday schedule was not in the children's best interest; and father should have been ordered to pay attorney fees.

{¶8}    On September 3, 2021, the court sustained all five objections.  In sustaining the objections, the court stated that it "adopts the Agreed Entry detailing the parties' child support agreement attached to Plaintiff's Objection and effective April 1, 2021" and ordered the parties to "submit the finalized and signed support agreement."

---

[2] Mother's motion also discussed holiday time.

3

The court also modified the parenting-time schedule in favor of mother and ordered father to pay $20,000 towards mother's attorney fees.

{¶9}    Father timely appealed from that order, raising three assignments of error for our review concerning parenting time, attorney fees, and child support.

### *Parenting Time*

{¶10}    In his first assignment of error, Father contends that the trial court erred by modifying the parenting-time schedule in favor of mother. The parenting-time issue relevant to this appeal is rather narrow and involves only Mondays in the summer and when the children do not have school. In short, both mother and father wanted parenting time on Mondays during the summer.

{¶11}    The court added Mondays during the summer to mother's schedule and ordered that father's weekday parenting time be modified so that it now begins on Tuesday morning, rather than Monday evening. Previously, the children went to mother on Monday morning after father's weekends with them, before returning to father that evening for his weekday parenting time which continued until Wednesday morning.

{¶12}    Father's motion asked the court to modify the schedule so that the children stayed with him all day Monday following his weekends, leading into his weekday parenting time. He argues that his proposed change would have reduced transitions and allowed each parent to spend quality time with the children. Mother counters that the schedule modification ordered by the court actually accomplished that goal.

{¶13}    We review modifications to shared-parenting plans for an abuse of discretion. *Dennis v. Dennis*, 1st Dist. Hamilton No. C-210370, 2022-Ohio-1216, ¶ 14, citing *Marimon v. Marimon,* 1st Dist. Hamilton No. C-210137, 2021-Ohio-3437, ¶ 23,

4

citing *Hall v. Hall*, 4th Dist. Adams No. 16CA1030, 2017-Ohio-8968, ¶ 19. An abuse of discretion "implies that the trial court's decision was unreasonable or arbitrary." *Kane v. Hardin*, 1st Dist. Hamilton No. C-180525, 2019-Ohio-4362, ¶ 6, citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶14}** A modification to parenting time is a modification to a shared-parenting plan. *See Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, ¶ 19 (explaining that shared-parenting plans "[i]nclude agreements concerning parenting time, holiday visitation, school and daycare placement, and payment of childcare expenses"). And shared-parenting plans are modified pursuant to R.C. 3109.04(E)(2)(b). *See Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546 (holding that "R.C. 3109.04(E)(2)(b) permits a court to modify the terms of the plan for shared parenting").

**{¶15}** R.C. 3109.04(E)(2)(b) provides that the terms of the plan for shared parenting may be modified so long as the modification is in the best interest of the children. While a court must consider the children's best interest under R.C. 3109.04(E)(2)(b), it is "not required to specifically consider the factors enumerated in R.C. 3109.04(F)(1)." *Marimon v. Marimon*, 1st Dist. Hamilton No. C-210137, 2021-Ohio-3437, ¶ 22 ("[N]othing in R.C. 3109.04(E)(2)(b) explicitly requires the trial court to examine the factors in R.C. 3109.04(F)(1), and R.C. 3109.04(F)(1) by its terms applies to 'an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities'—not modifications of terms of the shared-parenting plan.").

**{¶16}** The trial court found that mother "showed that it is in the best interest of the children to be with [her] overnight on weekends they are not in school to provide

continuity and reduce transitions." The court noted that mother does not work on Mondays, but father does, albeit remotely, and concluded that the children could do more activities with mother. The court concluded that "[i]t is in the best interest of the children to minimize parenting time exchanges" and "to be with a parent who does not work on Mondays during the summer for maximum quality time rather than with a parent who is working, even remotely."

{¶17} Father testified that his new job, which began in September 2020, gave him significant flexibility, such that he now works remotely with flexible hours, "wherever [he has a] secured internet connection and a computer." Father went on to testify that with his new job, "[t]he hours are flexible. It's more a matter of completing the workload for any one particular day." So, if father wanted to take time off on a Monday, he "would finish half of the claims that needed to be finished on Sunday night. And then, you know, finish that Monday morning early in the morning, and then do what I wanted for the rest of the day."

{¶18} He testified that, for the sake of "continuity," the schedule would be easier on the children because they could stay in one place during the day, rather than going to their mother's house, before returning to his house at 4:00 p.m. Father testified that this would be a return to the same continuity that the children have during the school year, because during that time, the children leave his house Monday morning, go to school, and return to his house after school.

{¶19} Father testified that he was not trying to take any time away from mother, stating:

> I think having them stay at the parent's house on Monday where they
> were the weekend before is clearly in their best interest because it allows

less transition for the children. It allows them to sleep in at both houses, if that is able to happen. It allows them to stay up later at night on the night before a day off. * * * [S]o I think from those standpoints, it would be less transition and allowing the children more freedom to do something on Sunday night, I think, is in their best interest.

{¶20} Mother is a pharmacist who works on Tuesdays, Wednesdays, and Fridays. She testified that she has had that schedule for approximately seven years, which allows her to focus on the children all day Monday without any other priorities. Mother testified that she has "a hundred percent of [her] time devoted to the children on Mondays. Zero commitment." She testified that she was concerned that if father's motion was granted then "the kids would be stuck * * * at home * * * because even though he has flexibility, he is still working."

{¶21} Mother testified that the children do not normally sleep in because they have early morning swim practice and "thrive on maintaining a routine." She stated that on those Mondays, she picks the children up in the morning from father and either takes them straight to swim practice, or they do activities together. Mother testified that "[t]he only problem is that it is always cut short because the end time is 4:00 [p.m.]" which requires them to "leave friends or leave activities early because of that time."

{¶22} Based on this testimony, the court's decision to modify the schedule in favor of mother was not an abuse of discretion. The testimony at the hearing demonstrated that while father does have flexibility with his work schedule, his work would need to be done at some point—typically on Sunday or early Monday morning before the children woke up. On the other hand, mother does not work at all on Mondays, and can dedicate the entire day to the children. The court's conclusion that

7

father's remote work would still take time away from the children was not unreasonable, as is it difficult to imagine that father could consistently complete such a significant amount of work outside of normal business hours and while the children were sleeping. Overall, the court's conclusion that quality time would be maximized by spending all day Monday with mother was not an abuse of discretion.

{¶23} The court's finding on minimizing parenting-time exchanges is less clear, but is not unreasonable. While the court does not explain how parenting-time exchanges are minimized, the modified schedule does reduce the number of exchanges taking place on Mondays over a short period of time.

{¶24} The first assignment of error is overruled.

### *Attorney Fees*

{¶25} In his second assignment of error, father argues that the trial court erred in ordering him to pay mother attorney fees because mother did not present evidence of the reasonableness of the fess. Father contends that mother "presented no evidence regarding attorney fees beyond the income of the parties and Mother's identification of her attorney fee statement."

{¶26} Mother counters that the court properly relied on the income of the parties and took judicial notice of counsel's qualifications. Mother contends that the court could determine reasonableness based on "its years of experience with all cases and all attorneys."

{¶27} This court reviews a trial court's award of attorney fees for an abuse of discretion. *Rummelhoff v. Rummelhoff*, 1st Dist. Hamilton Nos. C-210112 and C-210176, 2022-Ohio-1224, ¶ 46, citing *Burroughs v. Burroughs*, 1st Dist. Hamilton Nos. C-990001 and C-990031, 2000 Ohio App. LEXIS 868 (Mar. 10, 2000).

8

**{¶28}** R.C. 3105.73(B) provides that:

In any post-decree motion or proceeding that arises out of an action for divorce * * * the court may award all of part of reasonable attorney's fees and litigation expenses * * * if the court finds the award equitable * * * consider[ing] the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate [not including the parties' assets].

**{¶29}** Local Rule 17.1 of the Hamilton County Rules of Practice of the Court of Common Pleas for the Domestic Relations Division ("Loc.R. 17.1") also requires specific testimony prior to the awarding of attorney fees on issues such as the complexity of the case, attorney experience, and the parties' income.[3]

**{¶30}** This court has previously held that prior to awarding fees pursuant to R.C. 3105.73(B), the trial court must hold a hearing to determine the reasonableness of those fees. *Rummelhoff* at ¶ 47, citing *Hubbard v. Hubbard*, 3d Dist. Defiance No. 4-08-37, 2009-Ohio-2194, ¶ 12; *see Bagnola v. Bagnola*, 5th Dist. Stark No. 2004CA00151, 2004-Ohio-7286, ¶ 36 (holding trial court abused its discretion when it awarded attorney fees without holding a hearing to determine reasonableness). "Simply submitting itemized bills, without any evidence that the adverse party has been billed

---

[3] Loc.R. 17.1 provides that, in addition to an itemized bill, the attorney seeking fees shall present:
Testimony as to whether the case was complicated by any or all of the following:
New or unique issues of law[;] difficulty in ascertaining or valuing the parties assets[;] problems with completing discovery[;] any other factor necessitating extra time being spent on the case. Testimony regarding the attorney's years in practice and experience in domestic relations cases. Evidence of the parties' respective income and expenses, if not otherwise disclosed during the hearing.
The rule goes on to provide that "[f]ailure to comply with the provisions of this rule shall result in the denial of a request for attorney fees, unless jurisdiction to determine the issue of fees is expressly reserved in any order resulting from the hearing."

for, or paid, the fees, is insufficient and constitutes an abuse of discretion." *Id.,* citing *Hubbard* at ¶ 12.

{¶31}    Counsel did not testify, nor did she submit an affidavit establishing the reasonableness of the fees. The only evidence on the attorney-fee issue was an itemized billing statement, totaling $26,618.75, submitted at the end of the motions hearing before the magistrate and testimony from the mother that she "spent" those fees.  The following is the entire exchange regarding attorney fees that occurred at the hearing:

COUNSEL FOR MOTHER:  And last question, please look at Exhibit 18. Are these the attorney fees you've spent on this matter?

MOTHER: Yes.

COUNSEL FOR MOTHER: I think we're at noon.

THE COURT: Yes.  Ms. Howard, did you have any questions?

* * *

COUNSEL FOR FATHER: You know, your Honor, I'm mindful of the time, and I think I can handle all of it in closing.

* * *

THE COURT: Okay. All right. Do you want to talk about exhibits?

* * *

COUNSEL FOR MOTHER: * * * I'm also moving in [Exhibits] 13, 17, 18.

COUNSEL FOR FATHER: * * * 18, I guess for what it's worth I guess is in.

COUNSEL FOR MOTHER: My client just testified to it

COUNSEL FOR FATHER: Yeah. I mean, for what it's worth. That's fine.

**{¶32}** Given the lack of evidence demonstrating the reasonableness of the attorney fees, we hold that the court's attorney-fee award was an abuse of discretion. The second assignment of error is sustained.

### *Child Support*

**{¶33}** In his third assignment of error, father contends that the trial court erred by "adopting and ordering [him] to sign an unsigned draft Agreed Entry on child support."

**{¶34}** We review a domestic relations court's adoption of settlement agreements for an abuse of discretion. *Federle v. Federle*, 1st Dist. Hamilton No. C-180171, 2019-Ohio-2565, ¶ 8; *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997).

**{¶35}** The parties do not dispute that at the beginning of the May 25, 2021 hearing before the magistrate, both parties indicated they had reached an agreement on child support. The following exchange took place:

> THE COURT: * * * I have a couple of motions scheduled today. One was
>
> child support, but it sounds like that has – you've reached an agreement
>
> as far as that goes. Is that correct?
>
> [COUNSEL FOR MOTHER]: Correct,
>
> [COUNSEL FOR FATHER]: Yes, your Honor.

**{¶36}** Nonetheless, without explanation, the magistrate's decision included a decision on child support and reduced father's obligation to $2,028.49 due to his reduced income.

**{¶37}** Mother filed objections to the magistrate decision, arguing that the parties had agreed on child support in mediation and it was error for the magistrate to

11

rule on the child-support motion. In support, she attached emails between counsel and unsigned agreed entries that, among other things, reduced child support to $2,805 until March 2023, and then to $2,550 going forward.

**{¶38}** In an email attached to mother's amended objections, father's counsel wrote that father "will wait for the Judge to rule on your Objections as to child support, parenting time and attorney fees." Counsel noted that father was only agreeable to signing an entry that pertained to issues other than child support, parenting time and attorney fees.

**{¶39}** Complicating the issue further, mother filed objections to the magistrate's decision, and amended objections to the magistrate's decision. Each filing included two different versions of the agreement, with various terms including child-support terms, modified with redlined text.

**{¶40}** In his memorandum opposing mother's objections, Father contended that while the parties had hoped to settle the issue in mediation, the documents attached to mother's objections "were drafts and no Agreed Entry had been signed by either party." Nevertheless, the court sustained mother's objection and "adopt[ed] the agreed entry."

**{¶41}** On appeal, father again argues that the documents attached to mother's objections to the magistrate's decision were working drafts of a tentative agreement.

**{¶42}** Mother counters that the child-support issue was not litigated before the magistrate because the parties agreed that the issue had been settled. She contends that the terms of the agreement are not legitimately in dispute and that father is simply "tr[ying] to capitalize on the magistrate's error despite there being no genuine issue as to the terms of the agreement."

**{¶43}** While settlement agreements and agreed entries are favored in the law, "courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants." *Rulli*, 79 Ohio St.3d at 376, 683 N.E.2d 337. For instance, in *Rulli*, the Ohio Supreme Court held that "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Id.* at paragraph one of the syllabus. In that case, the agreement was read into the record, but a signed entry was not submitted as ordered by the trial court because the parties could not agree on the meaning of the terms. *Id.* at 376. The court concluded that "[g]iven the lack of finality and the dispute that evolved subsequent to the initial settlement hearing" there should have been an evidentiary hearing "to resolve the parties' dispute about the existence of an agreement or the meaning of its terms * * * before reducing the matter to judgment." *Id.; compare Federle*, 1st Dist. Hamilton No. C-180171, 2019-Ohio-2565, at ¶ 22 (holding that because "each of the essential terms of the in-court agreement [were] substantially included" in the agreement adopted by the court, and the parties agreed to the terms in open court, the trial court did not abuse its discretion in adopting a settlement agreement); *Kohler v. Kohler*, 2d Dist. Montgomery No. 2009 CA 3, 2009-Ohio-3434 (holding that an agreed entry was properly adopted where "[t]he essential terms" were clear and the agreement was read into the record).

**{¶44}** Given the ambiguity surrounding the agreed entry, we hold that the trial court abused its discretion in adopting and ordering the parties to sign it. The third assignment of error is sustained.

### *Conclusion*

**{¶45}**     For the foregoing reasons, we overrule father's first assignment of error, but sustain his second and third assignments of error.  We remand the cause so the trial court can hold a hearing on the reasonableness of the attorney fees and the agreed entry on child support.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.