[Cite as *Brehm v. Brehm*, 2022-Ohio-2308.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ALISHA BREHM nka SNYDER | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant /<br>Cross-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2021 AP 09 0024 |
| CASEY T. BREHM | |
| Defendant-Appellee /<br>Cross-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:            Appeal from the Tuscarawas County
                                     Court of Common Pleas, Juvenile Court
                                     Division, Case No. 2008 CS 00324


JUDGMENT:                            Affirmed in part; Reversed in part;
                                     Remanded


DATE OF JUDGMENT ENTRY:              June 29, 2022


APPEARANCES:


For Plaintiff-Appellant/Cross-Appellee      For Defendant-Appellee/Cross-Appellant

JAMES J. ONG                                PAUL HERVEY
Connolly, Hillyer & Ong                     4700 Dressler Avenue, N.W.
201 N. Main Street                          Canton, Ohio 44718
Uhrichsville, Ohio 44683

*Hoffman, J.*

**{¶1}** Plaintiff-appellant/cross-appellee Alisha Brehm nka Snyder ("Mother") appeals the August 19, 2021 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which denied her motion for modification of custody and granted defendant-appellee/cross-appellant Casey T. Brehm's ("Father") motion for child support modification.  Father appeals the same judgment entry, which ordered a downward deviation to zero from Mother's calculated child support obligation.  Father also appeals a second August 19, 2021 Judgment Entry, which denied his motion to tax transcript expenses as costs.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and Father were married in early 2007, one child was born as issue of the marriage ("the Child").  The parties separated prior to Father learning Mother was pregnant.  Father did not meet the Child until the Child was approximately ten days old.  Mother moved to Tuscarawas County sometime in 2008.  Father was living in Licking County at the time.

**{¶3}** On November 7, 2008, the Tuscarawas County Child Support Enforcement Agency and Department of Job and Family Services ("CSEA"), on behalf of the Child and Mother, filed a complaint to establish child support, naming Father as the obligor.  CSEA filed an amended complaint on November 24, 2008.  Subsequently, on January 5, 2009, CSEA filed a complaint to establish child support and to establish care, custody, and residential parentcy of the Child.  On February 12, 2009, Father filed a motion for custody, support, visitation, and temporary orders.  Therein, Father requested the trial court appoint a Guardian ad Litem ("GAL") for the Child.

**{¶4}** Via Decision filed September 9, 2009, the magistrate adopted Father's Shared Parenting Plan with modifications. The magistrate issued a Nunc Pro Tunc Decision on October 23, 2009, adding the terms of the parties' companionship with the Child, to wit: alternating weeks. Neither party was ordered to pay child support although each party was obligated to make a cash medical support payment, if necessary. The trial court retained jurisdiction over the Child. The parties agreed to defer the issue of whom would be the residential parent for school purposes until the Child approached school age. In early 2010, the Licking County Court of Common Pleas, Domestic Relations Division, finalized the parties' divorce. (Licking County Court of Common Pleas Case No. 2009 DR 329).

**{¶5}** On March 25, 2014, Father filed a motion to terminate or modify the shared parenting plan. Therein, Father requested he be designated residential parent for school purposes and Mother be ordered to pay child support. The magistrate conducted a hearing on the motion on July 24, 2014. Via Decision filed August 8, 2014, the magistrate recommended the shared parenting plan be amended to designate Father as residential parent. The trial court approved and adopted the magistrate's decision via Judgment Entry filed September 3, 2014. Via Decision filed September 3, 2014, the magistrate memorialized the parties' agreed companionship schedule. The magistrate designated Mother the obligor for child support, however, deviated her support obligation to zero.

**{¶6}** On July 1, 2020, Mother filed a motion for modification of custody. Therein, Mother asserted there had been a change in circumstances since the previous order of custody and it would be in the Child's best interest to designate her as legal custodian and residential parent. Father filed a motion to dismiss, arguing Mother failed to state a

reason to modify or terminate the shared parenting plan.  Subsequently, on September 22, 2020, Father filed a motion to modify child support.  The trial court reappointed the GAL, who ultimately recommended Mother be named residential parent for school purposes.

{¶7}    The magistrate conducted a hearing on October 29, 2020.  Following the hearing, the magistrate conducted an in-camera interview with the Child.  Via Decision filed March 8, 2021, the magistrate recommended both Mother and Father be granted legal custody of the Child.   The magistrate found there had been a change in circumstances, the Child was integrated into Mother's family and home, and any harm likely to be caused by a change in environment, specifically school, was outweighed by the advantages of the change of environment.  The magistrate ordered Father to pay child support to Mother in the amount of $500.09/month and provide medical and dental insurance for the Child.

{¶8}    Father filed timely objections to the magistrate's decision.  Therein, Father argued the magistrate failed to set forth the change of circumstances which warranted the modification of the shared parenting plan.  The trial court conducted a hearing on Father's objections on June 29, 2021.  Following the hearing, Father filed his proposed findings of fact and conclusions of law and a motion to tax transcript expenses as costs.

{¶9}    Via Judgment Entry filed August 19, 2021, the trial court overruled the magistrate's March 8, 2021 Decision.  The trial court found a change in circumstances had not occurred since the prior decree.  In addition, the trial court denied Mother's July 1, 2020 motion for modification of custody.  The trial court granted Father's September 22, 2020 motion for modification of child support, however, the court deviated Mother's

obligation to zero.  In a separate August 19, 2021 Judgment Entry, the trial court denied Father's motion to tax transcript expenses as costs.

{¶10} It is from the judgment entry denying her motion for modification of custody, Mother appeals, assigning as error:


I. JUDGE ADAM W. WILGUS ERRED AS A MATTER OF LAW BY FINDING THAT THE MAGISTRATE'S DECISION SHOULD BE OVERRULED DUE TO THERE BEING NO CHANGE OF CIRCUMSTANCES SINCE THE PRIOR DECREE.

II. THE LOWER COURT ERRED AS A MATTER OF LAW BY DETERMINING THAT NO CHANGE OF CIRCUMSTANCES HAD BEEN DEMONSTRATED BY APPELLANT.


{¶11} Father cross-appeals, raising the following assignments of error:


I. THE TRIAL COURT ABUSED ITS DISCRETION IN DEVIATING MOTHER'S CHILD SUPPORT OBLIGATION TO ZERO.

II. THE TRIAL COURT ERRED IN FAILING TO TAX TRANSCRIPT FEES AS COURT COSTS.

APPEAL

I

**{¶12}** In her first assignment of error, Mother argues the trial court erred in overruling the magistrate's decision by finding there was no change in circumstances since the prior decree.

**{¶13}** In her Brief to this Court, Mother asserts she was not required to demonstrate a change of circumstances because "[t]he March 8, 2021 Magistrate's Decision merely recommended a modification in the time allocation between the parties." Brief of Mother at 3. Mother relies on the Ohio Supreme Court's decision in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, in support of her position a party seeking a modification of a shared parenting plan is only required to show the modification is in the best interest of the Child.

**{¶14}** In *Fisher*, supra, the Ohio Supreme Court certified the following question review:

Is a change in the designation of residential parent and legal custodian of children a "term" of a court approved shared parenting decree, allowing the designation to be modified solely on a finding that the modification is in the best interest of the children pursuant to R.C. 3109.04(E)(2)(b) and without a determination that a "change in circumstances" has occurred pursuant to R.C. 3109.04(E)(1)(a)?

**{¶15}** *Id.* at ¶ 1.

**{¶16}** The *Fisher* Court answered the question in the negative and held:

A modification of the designation of residential parent and legal custodian of a child requires a determination that a "change in circumstances" has occurred, as well as a finding that the modification is in the best interest of the child. (R.C. 3109.04(E)(1)(a), construed.)

**{¶17}** *Id.* at syllabus.

**{¶18}** In reaching its decision, the *Fisher* Court explained:

*** [S]ubsection (A)(1) [of R.C. 3109.04] states that if one parent is allocated the primary parental rights and responsibilities for the care of a child, that parent is designated the residential parent and legal custodian of the child. Therefore, the residential parent and legal custodian is the person with the primary allocation of parental rights and responsibilities. When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities.

A court also allocates parental rights and responsibilities when it issues a shared-parenting order. R.C. 3109.04(A)(2). A court may allocate parental rights and responsibilities for the care of a child to both parents and issue a shared-parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the child in accordance with the approved plan for shared parenting. Id.

*** R.C. 3109.04(E)(1)(a) expressly provides for the modification of parental rights and responsibilities in a decree. *An allocation of parental rights and responsibilities is a designation of the residential parent and legal custodian.* Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian.

***

R.C. 3109.04(E)(1)(a) permits the modification of a prior decree allocating parental rights and responsibilities; R.C. 3109.04(E)(2)(b) permits a court to modify the terms of the plan for shared parenting, which must be approved by a court and incorporated by the court into the shared-parenting decree. Within the custody statute, a "plan" is statutorily different from a "decree" or an "order." A shared-parenting order is issued by a court when it allocates the parental rights and responsibilities for a child. R.C. 3109.04(A)(2). Similarly, a shared-parenting decree grants the parents shared parenting of a child. R.C. 3109.04(D)(1)(d). An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.

However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G). A plan details the implementation of the court's shared-parenting order. For example, a shared-parenting plan must

list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

*A plan is not used by a court to designate the residential parent or legal custodian*; that designation is made by the court in an order or decree. Therefore, the designation of residential parent or legal custodian cannot be a term of shared-parenting plan, and thus cannot be modified pursuant to R.C. 3109.04(E)(2)(b).

**{¶19}** *Id.* at ¶¶ 23-24, 26, 29-31 (Emphasis added).

**{¶20}** While Mother characterizes the magistrate's decision as "merely" a recommendation "the time allocation between the parties" be modified, the express language of her motion for modification establishes she sought to have the trial court "modify the current custody designation, and to now name her as the sole residential and legal custodian of the minor child."[1]  July 1, 2020 Motion for Modification of Custody at 1, unpaginated.  "When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities."  *Fisher*, supra at ¶ 23.  Because Mother requested the allocation of parental rights and responsibilities be modified to name her the sole residential parent and legal custodian of the Child, " a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child, pursuant to R.C. 3109.04(E)(1)(a)," was required.  *Id.* at ¶ 37.

---

[1] It should be noted, Father had been designated the residential parent of the Child for school purposes via Magistrate's Decision filed September 3, 2014.  In her September 3, 2014 Decision, the magistrate specifically stated, "[t]he shared parenting plan shall remain in effect, but modified."

**{¶21}** Based upon the foregoing, we find the trial court did not err in finding the magistrate was required to determine whether a change in circumstances had occurred.

**{¶22}** Father points this Court to the Ohio Supreme Court's recent decision in *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, 168 N.E.3d 396, to explain the "different legal hurdles" a party must overcome depending on whether there is a request to change or terminate a shared parenting plan or change or terminate a shared parenting decree or order.  Brief of Father at 8.

**{¶23}** In *Bruns*, the Ohio Supreme Court held, "under the plain language of R.C. 3109.04, a trial court is not required to find a change in circumstances, in addition to considering the best interest of the child, before *terminating a shared-parenting plan and decree* and designating one parent as the residential parent and legal custodian." *Id*. at ¶ 21 (Emphasis added).

**{¶24}** The *Bruns* Court distinguished *Fisher*, supra, noting the parents in *Fisher* both moved for a modification of the custody order, each seeking sole residential and legal custody. *Id*. at ¶ 16.  The Ohio Supreme Court added, "we answered the only question before the court, namely, whether a modification of joint residential and legal custody requires a change-in-circumstances finding."  *Id*. at ¶ 20.  The decision in *Bruns* only serves to confirm our decision herein.

**{¶25}** Mother's first assignment of error is overruled.

II

**{¶26}** In her second assignment of error, Mother submits the trial court erred in finding she failed to demonstrate a change in circumstances occurred.

**{¶27}** R.C. 3109.04(E), which governs the modification of shared parenting plans and decrees provides, in relevant part:

(1) (a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶28}** Although R.C. 3109.04 does not define "change in circumstances," Ohio courts have held the phrase pertains to "an event, occurrence, or situation which has a material and adverse effect upon the child." *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 23; *Pierson v. Gorrell*, 12th Dist. Butler No. CA 2011-11-216, 2012-Ohio-3878, ¶ 13. "A change in circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "In determining whether a 'change' has occurred, a trial judge must have wide latitude in considering all the evidence, and the court's decision must not be reversed absent an abuse of discretion." *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 23. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶29}** In her Affidavit attached to her Motion for Modification of Custody, Mother averred, "For approximately the past two years the minor child has indicated to me his desire to reside exclusively with me during the school year." Affidavit of Mother at ¶ 3. Mother further averred, "The minor child has been asking me for a significant period of time to ask the Court to allow him to reside in my home." *Id.* at ¶ 5. Thus, the only change of circumstances upon which Mother predicated her motion for modification was the Child's desire to live with her. In her Brief to this Court, Mother contends the evidence she presented, which demonstrated a change in circumstances, included the Child expressing his desire to live with her as well as Father's failure to provide adequate medical care for the Child.

{¶30} Mother's assertion Father failed to provide adequate medical care for the Child is based upon an incident which occurred in early September, 2020. The Child sustained a burn to his leg while riding a dirt bike. Father, who is an experienced firefighter, did not seek medical attention for the Child, but treated the burn with over-the-counter ointment. Father did not notify Mother of the Child's injury. When Mother picked up the Child and observed the burn, she took the Child to the Emergency Room at Union Hospital in Dover, Ohio. The Child was diagnosed with first and second degree burns and was referred to a burn clinic. Mother scheduled an appointment with Akron Children's Hospital. Mother did not advise Father she had taken the Child to the emergency room and did not notify Father of the follow-up appointment at Akron Children's Hospital until days later when she returned the Child to Father's care. Father chose to have the Child's follow-up treatment with a provider in Columbus, which was closer to his home and covered by his insurance.

{¶31} In its August 19, 2021 Judgment Entry, the trial court made specific findings relative to the burn incident as well as the following findings:

> 12. Child enjoys his time at both Mom and Dad's homes. Child expresses a desire to spend additional time at Mom's home.
>
> 13. Both parents clearly care for and love Child. Unfortunately, Mom and Dad have a difficult time communicating with each other. Thankfully, their respective paramours are supportive and both appear to be beneficial influences on Child.

14. Mom and Dad need to be more transparent with each other when it comes to sharing information about Child.  It's in Child's best interest for both parents to remain informed about Child's education, health and extracurricular activities.  Failing to share information is a detriment to Child's wellbeing and will not be tolerated by this Court.

15. Dad used his discretion in determining not to seek medical attention for Child's burn.  Based upon the testimony and pictures of the burn, it appears dad should have sought out medical treatment for Child and notified Mom.  Likewise, Mom should have informed Dad of the hospital visit and consulted with him prior to scheduling a follow up consultation during his time with Child.

August 19, 2021 Judgment Entry at p. 2-3.

**{¶32}** The trial court reviewed the factors set forth in R.C. 3109.04(E)(1)(a), supra, and concluded "a change of circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree has NOT occurred since the prior decree."  Aug. 19, 2021 Judgment Entry at p 3.

**{¶33}** Mother argues the trial court failed to consider the express wishes of the child in its change of circumstances analysis.  Mother relies on this Court's decision in *Schoolcraft v. Markel*, 5th Dist. Stark No. 2020 CA 00036, 2020-Ohio-3512, in which we found the trial court abused its discretion in failing to consider the child's wishes under its change in circumstances analysis.  *Id.* at ¶ 18.  In *Schoolcraft*, we also acknowledged a child's desire to live with a particular parent, without more, does not constitute a change

of circumstance. *Id.* at ¶ 14, citing *Davis v. Davis*, 5th Dist. Tusc. No. 2016 AP 05 0031, 2016-Ohio-7205, ¶ 38.

**{¶34}** Mother points to the testimony of the GAL at the October 29, 2020 hearing before the magistrate. The GAL testified, "when I spoke to [the Child] and said to him, 'Hey, you know, a change like this, moving to Mom's house, would mean a change in school' and he said 'I understand that, I'll be in school with my step sister'. . . and he was looking forward to that." Tr. at 33. The GAL also noted, "he's very clear that he would like to have some more time with Mom." *Id.* at 34. The GAL continued the Child's "request for more time with Mom. . .he had asked Dad for that many times, and he said, and you know, he said that 'Dad's told me no so many times I just quit asking.' . . . to give him some more time with Mom in this blended family where he seems to feel very comfortable just seems to make sense at this time." *Id.* at 37. The GAL indicated she would be fine with the switch and believed such would be in the best interest of the Child.

**{¶35}** The trial court stated it had conducted "an independent review as to the objected matters, trial transcript, exhibits and in camera." Aug. 19, 2021 Judgment Entry at p.3. There is no affirmative record demonstration the trial court did not consider the Child's wishes in its change of circumstances analysis. In fact, in its August 19, 2021 Judgment Entry, Findings of Fact #12, the trial court specifically noted the Child "expresses a desire to spend additional time at Mom's home" and had conducted an in-camera interview with the Child.

**{¶36}** Based upon our review of the entire record in this matter, we do not find "an event, occurrence, or situation which has a material and adverse effect upon the child" happened so as to result in a change of circumstances. To the contrary, the evidence

suggests the Child continues to perform well academically and maintains good relationships with both of his parents as well as his step-parents. Although the trial court determined Father should have sought treatment for the burn injury the Child sustained, there was no evidence to suggest Father failed to provide adequate medical care for the Child on any other occasion. Accordingly, we find the trial court did not abuse its discretion in finding no change of circumstances occurred since the prior decree.

{¶37} Mother's second assignment of error is overruled.

CROSS-APPEAL

I

{¶38} In his first assignment of error on cross-appeal, Father contends the trial court abused its discretion in ordering a downward deviation to zero from Mother's calculated child support obligation. We disagree.

{¶39} Pursuant to R.C. 3119.22, a trial court may deviate from the standard child support order if, after considering the factors and criteria set forth in R.C. 3119.23, such an order would be unjust or inappropriate and would not be in the best interest of the children. *Brown v. Brown,* 12th Dist. Butler No. CA2014–09–184, 2015-Ohio-1930, 2015 WL 2452047, ¶ 7. In determining if a deviation is in the best interest of the children, R.C. 3119.23 sets forth a number of factors the court may consider. *Id.* The trial court herein ordered a downward deviation to zero "based on extended parenting time with the child and the relative finances of the parties" pursuant to R.C. 3119.23(C) and (E). Aug. 19, 2021 Judgment Entry at 4.

**{¶40}** A trial court's decision regarding whether to order a deviation from the child support guidelines is reviewed for an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶41}** Based upon our review of the entire record in this matter, we find the trial court did not abuse its discretion in ordering a downward deviation to zero from Mother's calculated child support obligation.

**{¶42}** Father's first assignment of error on cross-appeal is overruled.

II

**{¶43}** In his second assignment of error on cross-appeal, Father asserts the trial court abused its discretion in failing to tax transcript fees as costs. We agree.

**{¶44}** Civ.R. 54(D), which governs the allowance of costs to the prevailing party in a civil action, provides: "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." The phrase "unless the court otherwise directs" grants the trial court discretion to order the prevailing party bear all or part of his or her own costs. *State By & Through Wray v. Karl R. Rohrer Assoc., Inc.*, 5th Dist. Tusc. No. 2017AP050012, 2018-Ohio-156, ¶ 5 (Citation omitted). Accordingly, "[a] court's assessment of costs under Civ.R. 54(D) is reviewed under an abuse of discretion standard." *State ex rel. Fant v. Regional Transit Auth.* (1990), 48 Ohio St.3d 39, 548 N.E.2d 240. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A

**{¶45}** R.C. 2303.21 states: "When it is necessary in an appeal, or other civil action to procure a transcript of a judgment or proceeding, or exemplification of a record, as evidence in such action or for any other purpose, the expense of procuring such transcript or exemplification shall be taxed in the bill of costs and recovered as in other cases."

**{¶46}** Civ. R. 53(D)(3)(b)(iii) provides:

An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), *shall be supported by a transcript* of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. * * * The objecting party *shall file the transcript* or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections. (Emphasis added.)

**{¶47}** Father filed objections to the magistrate's decision, specifically objecting to the magistrate's factual finding a change in circumstances occurred. As such, he was required to file a transcript of the magistrate's hearing pursuant Civ. R. 53(D)(3)(b)(iii). The transcript, therefore, was necessary litigation expense under R.C. 2303.21. The transcript expense was neither unusual nor unreasonable. Accordingly, we find the trial

court abused its discretion in denying Father's motion to tax the transcript fees as court costs.  See, *Zittkowski v. Zittkowski,* 70 Ohio App.3d 484, 487 (11th Dist. 1990),

**{¶48}** Father's second assignment of error on cross-appeal is sustained.

**{¶49}** The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion and the law.


By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur