[Cite as *H.C. v. P.C.*, 2023-Ohio-2110.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| H.C. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2022 AP 11 0051 |
| | : | |
| P.C. | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:
Appeal from the Tuscarawas County Court of Common Pleas, Domestic Relations Division, Case No. 2018 DC 10 0368

JUDGMENT:
AFFIRMED

DATE OF JUDGMENT ENTRY:
June 23, 2023

APPEARANCES:

For Plaintiff-Appellant:

LAURA L. MILLS
PIERCE C. WALKER
101 Central Plaza South, Suite 1200
Canton, OH 44702

For Defendant-Appellee:

MATTHEW P. MULLEN
JOHN P. MAXWELL
405 Chauncey Ave. NW
New Philadelphia, OH 44663

*Delaney, J.*

{¶1} Plaintiff-Appellant H.C. appeals the October 28, 2022 judgment entry of the Tuscarawas County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

### Dissolution of Marriage and Shared Parenting Plan

{¶2} Plaintiff-Appellant H.C. ("Mother") and Defendant-Appellee P.C. ("Father") were married on May 5, 2008. Three children were born as issue of the marriage: E.C. in October 2008, A.C. in November 2011, and L.C. in June 2015.

{¶3} On October 18, 2018, Mother and Father filed a Petition for Dissolution of Marriage. On November 21, 2018, the trial court issued a Judgment Entry/Decree of Dissolution of Marriage with Minor Children. The judgment entry incorporated the parties' Separation Agreement, which included a Shared Parenting Plan. In the Shared Parenting Plan, Mother and Father agreed to joint custody of the children and a visitation schedule.

### Motion to Show Cause

{¶4} On April 9, 2019, Mother filed a motion to show cause as to why Father should not be held in contempt for his failure to comply with the terms of the Shared Parenting Plan. Mother stated Father was not communicating with her regarding the children and other issues. The trial court set the matter for a show cause hearing.

{¶5} The magistrate issued an Order on June 10, 2019. The show cause hearing was held on June 3, 2019 where the parties entered into an agreement to engage in parenting counseling and communicate through Our Family Wizard. Mother filed a motion to dismiss her motion to show cause, which the trial court granted on October 8, 2019.

**Modification of Child Support**

{¶6} On January 12, 2022, the trial court entered an uncontested judgment entry revising Father's child support obligation due to an Administrative Adjustment Recommendation. Father filed a Motion to Vacate the judgment entry on February 9, 2022, arguing he was not served with the underlying motion to adjust the child support obligation.

{¶7} On April 18, 2022, the trial court granted Father's motion to vacate the January 12, 2022 judgment entry. Child support was ordered to be paid as established in the November 21, 2018 Decree of Dissolution of Marriage.

**Motion for Reallocation or Termination of the Shared Parenting Plan**

{¶8} On March 7, 2022, Mother filed a "Motion to Modify Parenting Order as to Allocation of Parental Rights/Motion to Terminate Shared Parenting Plan/Motion for Child Support." Mother requested that she be named the residential parent and sole legal custodian of the three minor children. The trial court set the matter for a status conference on April 4, 2022. Father filed a response to Mother's motion on March 24, 2022.

{¶9} The magistrate issued her Order on April 8, 2022 after the status conference. The magistrate appointed a Guardian ad Litem.

{¶10} On May 18, 2022, the GAL requested that Mother and Father submit to hair follicle drug screens due to concerns of marijuana use. Father tested positive for THC Metabolite. On June 1, 2022, the trial court ordered Father to submit to weekly screens until he submitted three consecutive clean screens.

{¶11} The GAL issued her interim GAL report on October 28, 2022. Based on the status of her investigation, the GAL recommended the parties continue with the status quo of parenting time based on the Shared Parenting Plan.

{¶12} On September 29, 2022, the trial court held an evidentiary hearing on Mother's motions for reallocation of parental rights and/or termination of the Shared Parenting Plan. The following evidence was adduced at the hearing.

{¶13} The GAL testified first. In her final report, the GAL recommended that the Shared Parenting Plan be terminated. (T. 7). The GAL recommended that Mother be named the residential and custodial parent of the children, while Father should still have parenting time and visitation. (T. 7-8). The GAL testified her main basis for recommending the Shared Parenting Plan be terminated was because "[t]hese parents really are not capable of making joint decisions for the kids." (T. 7). During her observation, the GAL found there was no communication between Mother and Father. Father appeared to avoid communicating with Mother by not responding to Mother's questions or asking other parents for help with the children rather than asking Mother. (T. 9). The GAL provided an example where Mother texted Father that if he had asked her, she could have taken their child to their game. Father responded, "* * * I have no desire to communicate with you more than I absolutely have to." (T. 11).

{¶14} The GAL said Mother and Father were not abusive to each other when they communicated with each other. (T. 32). They did not call each other names. Mother and Father got into arguments regarding the children but at other times they could reach a decision. (T. 33). Neither parent had denied the other the right to parenting time. (T. 45).

{¶15} The children attended medical appointments, which were scheduled by Mother. The GAL was concerned because one of the children was scheduled to see a medical specialist during Father's parenting time. Father cancelled the appointment to take the child fishing and Mother had to reschedule it. (T. 20).

{¶16} The GAL reported that Mother called Child Protective Services while the children were in Father's care. (T. 61). One of the children told Mother they used a gun unsupervised. (T. 18). CPS investigated and closed the case. (T. 62).

{¶17} The GAL reported that Father had filed a police report against Mother. On July 16, 2022, Father contacted the Tuscarawas County Sheriff's Office with a complaint that Mother had hacked into his computer and social media sites to gain personal information to use against him in a custody dispute. (T. 22, Exhibit 15). Mother emailed the GAL on July 16, 2022 to tell the GAL that after reviewing her child's iPad used at Father's house, Mother discovered text messages between Father and another adult, which Mother then relayed to the adult's family member. Father was made aware Mother had discovered the text messages and that Mother communicated the content of the text messages to the adult's family member. On July 15, 2022, the back window of Mother's van was shattered while the van was parked in the driveway and Mother was not at home. Mother filed a police report. (T. 22, Exhibit 15).

{¶18} The children were doing well in school. (T. 35). Mother and Father resided in the same school district. (T. 48). The children participated in multiple sporting activities, which Father was involved in as a coach. (T. 36, 41). The GAL found both Father and Mother's homes to be appropriate. The children expressed to the GAL that they were

satisfied with their current living arrangements and wanted things to stay the same. (T. 40). Father wanted to continue the Shared Parenting Plan. (T. 42).

{¶19} Father did not express any concerns about Mother's parenting to the GAL. (T. 26). Mother expressed issues with Father's alcohol use and care of the children. The GAL did not consider Father's alcohol use an issue during her observation. (T. 52). The GAL felt Father's attitude towards the custody arrangement was to maintain two separate, independent environments for the children, Mother's house and Father's house. (T. 30).

{¶20} The GAL could not testify to whether there had been a change of circumstances between the parties because she did not know the relationship before the inception of the Shared Parenting Plan. (T. 74). The GAL did not think it would be harmful to the children to maintain the same 50/50 parenting time, but she stood firmly that the Shared Parenting Plan should be terminated because the parents could not make joint decisions. (T. 72). The GAL did not agree with Father's philosophy of separate lives being conducive to co-parenting. (T. 77).

{¶21} At the time he entered into the Shared Parenting Plan, Father testified that he had no concerns. (T. 102). Father felt no concerns because even during the marriage, Father and Mother had problems co-parenting. (T. 114). He felt they were still going to have issues with their disagreements after the divorce. (T. 115). He did not ask for sole custody because he did not want to take the children away from their mother. (T. 115). He believed they could co-parent because while they argued, they eventually reached a decision and the children got what was best for them. (T. 115). Father testified that he felt Mother wanted things a certain way and when he did not agree with Mother, Mother accused Father of not co-parenting. (T. 103). Father did not feel that wholly submitting to

Mother's parenting style was co-parenting; as a divorced parent, he wanted his children to see their parents as individuals with their own beliefs and parenting styles. (T. 147). Father stated that if Mother enforced a rule at her home, he would not require the children to abide by the rule if it was not a rule at his home. (T. 150).

{¶22} Father did not communicate with Mother on the phone. (T. 169). He only texted her about the children. (T. 169). His reason for only texting about the children was to avoid more fights and more drama between the two of them. (T. 169).

{¶23} Father admitted that he drank socially and had a past history of alcoholism. (T. 113). He also admitted that one time on a camping trip with the children, he was visibly intoxicated in front of the children. (T. 109-111). In December 2020, Father was cited for an OVI. (T. 112). Father admitted to smoking marijuana in the past but stopped smoking marijuana. (T. 146).

{¶24} The Shared Parenting Plan contains a right of first refusal. Father testified that he had to leave town for work during his parenting time. The children asked to attend a sleepover with friends while he was gone. Instead of contacting Mother for her right of first refusal, Father permitted the children to attend the sleepovers. Mother picked the children up from school and did not permit them to attend the sleepover. (T. 117-118). Through Snapchat, Father communicated with one of the children, who was upset the sleepover was cancelled, that it was Mother's decision to cancel, and Father did not agree with Mother's decision. (T. 135).

{¶25} Mother was remarried with two adult stepchildren. (T. 190). When Mother and Father were married, Mother testified their parenting style was very similar. (T. 192).

They quickly entered into the Shared Parenting Plan, but Mother felt that Father would play the role of the "friend" and she would be the "disciplinarian." (T. 193).

{¶26} Mother described the communication style between Mother and Father as "toxic" and the root of their inability to co-parent. (T. 193). Father would not speak to her in person. (T. 193). When the children were dropped off, Father did not say hello to Mother. (T. 194). Father had the children communicate to Mother about changes in parenting time instead of Father contacting Mother directly. (T. 199). Mother testified that there has been more than one incident of Father's failure to abide by the right of first refusal when he had to be out of town for work. (T. 198). When the children had accidents or injuries during Father's parenting time, Mother noticed the children would not discuss the incidents with her. (T. 202). Mother testified it would be in the best interests of the children if the Shared Parenting Plan was terminated to provide the children with consistency, structure, and stability while Mother and Father continued to work on co-parenting. (T. 235).

{¶27} At the conclusion of the hearing, the trial court stated:

All right, based on what I've heard here I'm gonna overrule the Motion to Modify and Terminate Shared Parenting Plan. There's been no change in circumstances. In fact, that the parties have some continuing disagreements doesn't mean that the shared parenting plan should be modified. I will prepare a written decision and send a copy to the attorneys.

(T. 238). Counsel requested written findings of fact and conclusions of law. (T. 238).

**Judgment Entry**

{¶28} The trial court issued its judgment entry on October 28, 2022. After reciting the facts, the trial court first analyzed the Motion to Reallocate Parental Rights under R.C. 3109.04(E)(1)(a) and whether there had been a change of circumstances. The trial court found Mother failed to present evidence of a change of circumstances. The trial court next considered the best interest factors under R.C. 3109.04(F)(1). While the parents had differing parenting styles, the trial court found the children were doing well in school, were integrated into their families and communities, loved and respected both parents, and did not want the parenting arrangement to change.

{¶29} The trial court found that even if it terminated the Shared Parenting Plan, Mother did not provide evidence as to why the Tuscarawas County standard order of 50/50 parenting time should not be applied. The trial court noted the GAL could not support her decision to recommend the termination of the Shared Parenting Plan other than referring to the parties' lack of communication.

{¶30} Finally, the trial court sua sponte modified the Shared Parenting Plan to delete the right of first refusal under R.C. 3109.04(E)(2)(b). The trial court found there was "no reason why Mother or Father should not be able to arrange for the children to stay with grandparents, other relatives, or overnight with children's friends on their own time." (Judgment Entry, October 28, 2022).

{¶31} It is from this judgment entry that Mother now appeals.

**ASSIGNMENTS OF ERROR**

{¶32} Mother raises three Assignments of Error:

I. THE TRIAL COURT ERRED IN NOT APPLYING ONLY THE BEST INTERESTS OF THE CHILDREN FACTORS UNDER O.R.C. 3109.04(E)(2)(C) WHEN CONSIDERING A MOTION TO TERMINATE THE SHARED PARENTING PLAN.

II. THE TRIAL COURT ERRED IN NOT FINDING A CHANGE OF CIRCUMSTANCES TO MODIFY THE SHARED PARENTING PLAN.

III. THE TRIAL COURT ERRED IN MODIFYING THE SHARED PARENTING PLAN BY DELETING THE RIGHT OF FIRST REFUSAL WITHOUT PROVIDING THE EXPLANATION UNDER THE BEST INTEREST OF THE CHILDREN.

**ANALYSIS**

**I. and II.**

{¶33} We consider Mother's first and second Assignments together because they are interrelated. In her first Assignment of Error, Mother contends the trial court erred in not considering the best interests of the children when it denied Mother's "Motion to Modify Parenting Order as to Allocation of Parental Rights/Motion to Terminate Shared Parenting Plan/Motion for Child Support." In her second Assignment of Error, Mother argues the trial court erred when it did not find a change of circumstances. We disagree on both assignments of error.

**Standard of Review**

{¶34} Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *DiDonato v. DiDonato*, 5th Dist. Tuscarawas, 2016-Ohio-1511, 63 N.E.3d 660, ¶ 44, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Id.*, quoting *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001 WL 1141268.

{¶35} The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We are mindful that the knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record, and the reviewing court should be guided by the presumption that the trial court's findings were correct. *See Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

{¶36} "R.C. 3109.04 establishes the process for allocating parental rights and responsibilities between the parents of a minor child." *Suever v. Schmidt*, 3rd Dist. Allen No. 1-22-14, 2022-Ohio-4451, ¶ 14 quoting *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, ¶ 8. The shared parenting plan in the present case was adopted pursuant to R.C. 3109.04(D)(1)(a)(i), which relates to situations in which "both parents jointly make the request in their pleading or jointly file the motion and also jointly file the plan."

{¶37} In Mother's March 7, 2022 motion, she requested the trial court for an "Order reallocating parental rights and responsibilities with respect to the parties' minor children * * *; an Order designating Plaintiff as the residential parent and sole legal custodian of the parties' minor child [sic]; [and an] Order terminating the Shared Parenting Plan." Mother argued in her motion that changes in circumstances had occurred with respect to the parties and that it would be in the best interests of the children for the trial court to terminate the Shared Parenting Plan.

### Modification vs. Termination

{¶38} Mother contends in her appeal that upon the presentation of her motion to terminate the Shared Parenting Plan, the trial court applied the incorrect statutory consideration -- change of circumstances instead of the best interests of the children. The Supreme Court of Ohio addressed this issue and distinguished the analysis required for modifying shared parenting plans and terminating a shared parenting plan. *Bruns v. Green*, 163 Ohio St.3d 43, 2020-Ohio-4787, ¶ 8-13. The Supreme Court clarified that "a trial court is not required to find a change in circumstances, in addition to considering the best interest of the child, before terminating a shared-parenting plan and decree and designating one parent as the residential parent and legal custodian." *Id*. at ¶ 21. When

the trial court terminates the shared parenting plan, it "shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of [R.C. 3109.04] * * * as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made." R.C. 3109.04(E)(2)(d).

{¶39} In so ruling, the *Bruns* Court explained its conflicting decision in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, where it held that a modification of the designation of a residential parent and legal custodian of a child requires that a change of circumstances has occurred, as well as finding that the modification is in the best interests of the child. *Id.* at ¶ 15. In *Fisher*, both parents requested a termination of the shared parenting plan, which the trial court granted and found it was in the best interest of the child for mother to be named the residential parent and legal custodian. On appeal, the Third District construed the trial court's actions as a modification of a shared parenting plan, not a termination of shared parenting plan, but still found the trial court was not required to consider a change of circumstances under R.C. 3109.04(E)(1)(a). *Id.* at ¶ 17. The matter was certified for a conflict and the issue presented to the Supreme Court was whether a change in the designation of the residential parent and legal custodian was simply a "term" of the shared parenting plan, thereby allowing the designation to be modified solely on the consideration of the best interest of the child, not whether there was a change of circumstances. *Id.* at ¶ 18. Based on the parties' and appellate court's interpretation of the trial court's decision as a *modification* and not a *termination* of a shared parenting plan, the Supreme Court found

the trial court was required to utilize a change of circumstances analysis. *Id.* at ¶ 19-20; *R.A.R. v. C.E.R.*, 2023-Ohio-232, 206 N.E.3d 822, ¶ 65 (5th Dist).

{¶40} *Bruns* clarified *Fisher* but did not overrule *Fisher*. Accordingly, for a modification of a shared parenting plan, the trial court is required to consider whether there has been a change in circumstances. "A modification of the designation of residential parent and legal custodian of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child. (R.C. 3109.04(E)(1)(a), construed.)" *Brehm v. Brehm*, 5th Dist. Tuscarawas No. 2021 AP 09 0024, 2022-Ohio-2308, ¶ 16-17 quoting *Fisher* v. *Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, syllabus.

{¶41} Having reviewed R.C. 3109.04, the *Bruns* clarification for termination of a shared parenting plan, and the *Fisher* factors for the modification of a shared parenting plan, we consider the trial court's October 28, 2022 judgment entry. Mother's "Motion to Modify Parenting Order as to Allocation of Parental Rights/Motion to Terminate Shared Parenting Plan/Motion for Child Support" requested modification and/or termination of the Shared Parenting Plan. Our review of the trial court's judgment entry shows the trial court considered *both* change of circumstances and best interests of the children before it denied (not dismissed) all prongs of Mother's "Motion to Modify Parenting Order as to Allocation of Parental Rights/Motion to Terminate Shared Parenting Plan/Motion for Child Support."

### Best Interests of the Children

{¶42} The trial court considered the best interest of the children under R.C. 3109.04(F) in its October 28, 2022 judgment entry. It found the evidence showed that the

children were doing well in school, they were integrated into their families and communities in both homes, they loved and respected both parents, and they did not want the Shared Parenting Plan to change. The best interest factors outlined in R.C. 3109.04(F) state:

> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶43} The GAL recommended it was in the best interest of the children for the trial court to terminate the Shared Parenting Plan based on the parents' inability to communicate effectively. The trial court, as the trier of fact, is permitted to assign weight

to the GAL's testimony and recommendation and to consider it in the context of all the evidence before the court. *Matter of M.G.*, 5th Dist. Stark No. 2022CA00112, 2023-Ohio-695, 2023 WL 2380484, ¶ 77. The trial court has the discretion to follow or reject any recommendation of a GAL. *Matter of M.G.*, 5th Dist. Stark No. 2022CA00112, 2023-Ohio-695, 2023 WL 2380484, ¶ 83 citing *Wine v. Wine*, 5th Dist. Delaware No. 04 CA F 10, 2005-Ohio-975.

{¶44} The record in this case supports the trial court's findings of fact and conclusions of law. The GAL testified that she did not consider Father's alcohol use to be an issue. After three positive tests, Father had tested negative for marijuana use. The GAL testified the children expressed to her that they did not want the parenting schedule to change. The children were healthy. The children were involved in multiple sporting activities. The children had no reported issues at school. There was no testimony that Mother or Father continuously and willfully interfered with parenting time. Mother and Father resided in the same community. While the parents did not communicate well, the children appeared to be doing well in the parents' separate households.

{¶45} We find the trial court engaged in a best interests analysis and the record supported its conclusion that it was not in the best interests of the children to modify and/or terminate the Shared Parenting Plan. Mother's first Assignment of Error is overruled.

### Change of Circumstances

{¶46} In its October 28, 2022 judgment entry, the trial court found that based on the testimony presented at the hearing, there had been no change of circumstances warranting a modification of the Shared Parenting Plan.

{¶47} R.C. 3109.04(E)(1)(a) requires a court to find a change in circumstances of the child, residential parent, or either parent subject to a Shared Parenting Decree before modifying a decree allocating parental rights and responsibilities. Pursuant to the statute, three elements must be met to change the residential parent status: 1) there must be an initial showing of a change in circumstances; 2) if circumstances have changed, the modification of custody must be in the children's best interest; and 3) any harm to the children from a modification must be outweighed by the benefits of such modification. *Thompson v. Thompson*, 5th Dist. Stark No. 2012CA00176, 2013-Ohio-2587, 2013 WL 3193541, ¶ 20. "Although R.C. 3109.04 does not provide a definition of the phrase 'change in circumstances,' Ohio courts have held that the phrase is intended to denote 'an event, occurrence, or situation which has a material and adverse effect upon a child.'" Thompson v. Thompson, 5th Dist. Stark No. 2012CA00176, 2013-Ohio-2587, 2013 WL 3193541, ¶ 23 quoting *Lewis v. Lewis*, 12th Dist. No. CA2001–09–209, 2002 WL 517991 (April 8, 2002), citing *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist.2000). In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one "of substance, not a slight or inconsequential change." *Davis* v. *Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). "The purpose of requiring a finding of a change in circumstances is to prevent a constant re-litigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 955 N.E.2d 453, 2011–Ohio–2610, ¶ 17 (3rd Dist.), citing R.C. 3109.04(E)(1)(a).

{¶48} The GAL and Mother contended the Shared Parenting Plan should be terminated because Father and Mother could no longer communicate or make joint decisions for the children. The trial court found the evidence showed that Mother and Father's distinct parenting styles and resulting disagreements predated the Shared Parenting Plan. The evidence presented at the hearing supports the trial court's findings of fact and conclusions of law as to the lack of a change of circumstances. Father testified that while married, they had disagreements as to parenting. Mother testified that she knew going into the Shared Parenting Plan, she would play the role of "disciplinarian" and Father would be the "friend." Neither parent, however, wanted to deny the children their time with the other parent, which they testified was the basis for the Shared Parenting Plan.

{¶49} Mother's second Assignment of Error is overruled.

**III.**

{¶50} Mother contends in her third Assignment of Error that the trial court abused its discretion when it modified the Shared Parenting Plan to delete the parties' right of first refusal. We disagree.

{¶51} Pursuant to R.C. 3109.04(E)(2)(b), "The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children."

{¶52} In its finding of facts, the trial court found:

20. Mother testified about her concerns, including a time that she had been denied her right of first refusal.

21. The incident involved Father having to travel to work on a school day the children were to be with him overnight. He made arrangements with parents of the children's friends for the boys to stay overnight and go to school the next morning. Mother became aware of the plans, cancelled them, picked the boys up after school, and took them to her house.

22. This action by Mother, although within her right, undermined Father's role as a co-parent.

(Judgment Entry, October 28, 2022).

{¶53} The trial court then concluded:

12. The Court, on its own motion, modifies the Shared Parenting Plan to delete the right of first refusal provision, as permitted by R.C. §3109.04(E)(2)(b).

13. There is no reason why Mother or Father should not be able to arrange for the children to stay with grandparents, other relatives, or overnight with children's friends on their own time.

(Judgment Entry, October 28, 2022).

{¶54} R.C. 3109.04(E)(2)(b) provides that the terms of the plan for shared parenting may be modified so long as the modification is in the best interest of the children. While a court must consider the children's best interest under R.C. 3109.04(E)(2)(b), it is "not required to specifically consider the factors enumerated in R.C.

3109.04(F)(1)." *Sharif v. Sharif*, 1st Dist. Hamilton No. C-210472, 2022-Ohio-2856, 2022 WL 3440308, ¶ 15 quoting *Marimon v. Marimon*, 1st Dist. Hamilton No. C-210137, 2021-Ohio-3437, ¶ 22 ("[N]othing in R.C. 3109.04(E)(2)(b) explicitly requires the trial court to examine the factors in R.C. 3109.04(F)(1), and R.C. 3109.04(F)(1) by its terms applies to 'an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities'—not modifications of terms of the shared-parenting plan."). *Id.* at ¶ 15. This Court reviews the merits of a trial court's modification of the terms of a shared parenting plan through R.C. 3109.04(E)(2)(b) under an abuse of discretion standard. *Blumenauer v. Martino*, 5th Dist. Tuscarawas No. 2019 AP 08 0025, 2020-Ohio-259, 2020 WL 468432, ¶ 18 citing *Kovach v. Lewis*, 5th Dist. Ashland No. 11-COA-018, 2012-Ohio-1512. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶55} The parties testified to the sleepover incident. Father testified that when he had to leave home for a work trip, the children asked to be allowed to attend sleepovers during his parenting time. (T. 117). Father testified as to Exhibit 8, text messages between Mother and Father regarding the sleepover. (T. 118). Father texted Mother at 8:49 a.m. and said that he needed to leave town that night. The children asked to do sleepovers and he chose to let them. (Ex. 8). Mother responded that she did not agree with the children having sleepovers on a school night rather than coming to her house. She stated Father was required to ask her. (Ex. 8). Mother told Father that she cancelled the sleepovers and would be picking the children up from school. (Ex. 8).

{¶56} The trial court predicted that in this case, the right of first refusal could prevent Mother or Father from scheduling an overnight stay with the children's grandparents, relatives, or friends. One element of the best interest factors considers the child's adjustment to the child's home, school, and community, which arguably includes overnight stays outside of the parent's home. Under the factual circumstances of this case, we cannot say the trial court abused its discretion to modify the Shared Parenting Plan to eliminate the right of first refusal.

{¶57} Mother's third Assignment of Error is overruled.

## CONCLUSION

{¶58} The judgment of the Tuscarawas County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.